1
2

JS - 6

3
4

5            UNITED STATES DISTRICT COURT

6            CENTRAL DISTRICT OF CALIFORNIA

7

8    MOSHE YHUDAI,                          )   CASE NO. CV 15-05035 MMM (JPRx)
                                            )
9                 Plaintiff,                )   ORDER GRANTING PLAINTIFF'S
                                            )   MOTION TO REMAND AND DENYING
10         vs.                              )   DEFENDANTS' MOTION TO DISMISS
                                            )
11   MORTGAGE ELECTRONIC                    )
12   REGISTRATION SYSTEMS, INC., a          )
     suspended corporation, BANK OF         )
13   AMERICA N.A an unknown business        )
     entity; BANK OF NEW YORK               )
14   MELLON, F/K/A THE BANK OF NEW          )
     YORK, AS TRUSTEE, ON BEHALF OF         )
15   THE HOLDERS OF THE                     )
     ALTERNATIVE LOAN TRUST 2005-51,        )
16   MORTGAGE PASS THROUGH                  )
     CERTIFICATES, SERIES 2005-51, an       )
17   unknown business entity; NATIONAL      )
     DEFAULT SERVICING                      )
18   CORPORATION AS *TRUSTEE* FOR           )
     BANK OF NEW YORK MELLON,               )
19   F/K/A THE BANK OF NEW YORK, AS         )
     TRUSTEE, ON BEHALF OF THE              )
20   HOLDERS OF THE ALTERNATIVE             )
     LOAN TRUST 2005-51, MORTGAGE           )
21   PASS-THROUGH CERTIFICATES,             )
     SERIES 2005-51, an unknown business    )
22   entity; SELECT PORTFOLIO               )
     SERVICING, INC. an unknown business    )
23   entity and Does 1 through 100,         )
                                            )
24                Defendants.               )
                                            )
25

26         On May 15, 2015, Moshe Yhudai filed this action in Los Angeles Superior Court against

27   Mortgage Electronic Registration Systems, Inc. ("MERS"); Bank of America N.A. ("BofA"); Bank

28   of New York Mellon ("BNY"), f/k/a The Bank of New York, as trustee on behalf of the holders of

1    the Alternative Loan Trust 2005-51; National Default Servicing Corp. ("NDSC") as trustee for

2    BNY; Select Portfolio Servicing, Inc. ("SPS"); and certain fictitious defendants (collectively

3    "defendants").[1]

4            On July 16, 2015, Yhudai filed a motion to remand, asserting that the notice of removal had

5    been filed more than thirty days after the service of the complaint on certain defendants, and that not

6    all defendants had consented to removal.[2]  Yhudai also contends that the court lacks subject matter

7    jurisdiction because his complaint presents no federal question and the citizenship of the parties is not

8    completely diverse.[3]  Defendants oppose the motion.[4]

9            Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds

10   this matter appropriate for decision without oral argument.  The hearing calendared for October 5, 2015,

11   is therefore vacated, and the matter is taken off calendar.

12

13                          **I.  FACTUAL AND PROCEDURAL BACKGROUND**

14           Yhudai is the owner of real property located at 3539 Summerfield Drive, Los Angeles,

15   California 91423.[5]  On August 18, 2005, Yhudai obtained a $960,000 mortgage loan that was

16   secured by a deed trust on the property.  The loan was made by America's Wholesale Lender

17   ("Wholesale").[6]  The deed of trust named Recontrust Company N.A as trustee,[7] and MERS as the

18

19   _____

20           [1]Notice of Removal ("Removal"), Docket No. 1 (July 2, 2015), ¶ 1.

21           [2]Notice of Motion and Motion to Remand, Memorandum of Points and Authorities in Support
     Thereof ("Remand"), Docket No. 13 (July 16, 2015) at 2.  See also Plaintiff's Reply to Defendant's
22   Opposition to Plaintiff's Motion to Remand ("Reply"), Docket No. 19 (Sept. 22, 2015) at 4-6.

23           [3]Remand at 2; Reply at 2-4.

24           [4]Opposition re: to Notice of Motion and Motion to Remand ("Opposition"), Docket No. 14 (July
25   14, 2015).

26           [5]Complaint, Docket No. 1-1 (July 2, 2015), ¶1.

27           [6]*Id*., ¶ 8.

28           [7]*Id*., ¶ 9.

1    nominee of the lender and the lender's successors and assigns.[8]

2    On or about February 18, 2015, SPS, the loan servicer, executed a notice of default on behalf

3    of NDSC, stating that Yhudai was $89,578.62 in arrears on his mortgage loan.[9]  The notice of default

4    gave Yhudai ninety days to cure the default, but noted that the amount of the arrearage would

5    continue to grow during this time.[10]  It stated that if Yuhdai failed to cure within ninety days, a

6    trustee's sale would be scheduled.[11]

7    Yhudai alleges that defendants do not have a right to sell his property at foreclosure because

8    they were not parties to the original mortgage loan.  He also asserts that all defendants conspired

9    unlawfully to foreclose on the property, and that each defendant acted in the course and scope of its

10   agency for the remaining defendants with full knowledge and consent of the co-defendants.[12]

11   Yhudai pleads claims for violation of the Fair Debt Collection Practices Act, California Civil Code

12   § 1788.1(a);[13] unlawful foreclosure in violation of the California Homeowner Bill of Rights

13   (HBOR);[14] slander of title;[15] fraud-intentional misrepresentation;[16] quiet title;[17] declaratory and

14   injunctive relief;[18] and unlawful business practices under California Business & Professions Code

15

16   _____

17   [8]*Id.*, ¶ 10.

18   [9]*Id.*, ¶ 11.

19   [10]*Id.*, ¶ 12.

20   [11]*Id.*

21   [12]*Id.*, ¶ 13.

22

23   [13]*Id.*, ¶¶ 14-28.

24   [14]*Id.*, ¶¶ 29-38.

25   [15]*Id.*, ¶¶ 39-54.

26   [16]*Id.*, ¶¶ 55-73.

27   [17]*Id.*, ¶¶ 74-90.

28   [18]*Id.*, ¶¶ 91-93.

§ 17200, et seq.[19]

## II.  DISCUSSION

### A.     Legal Standard for Removal

The right to remove a case to federal court is entirely a creature of statute.  See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states.  See 28 U.S.C. §§ 1441(a), (b).  Only state court actions that could originally have been filed in federal court can be removed.  28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The removing defendants bear the burden of establishing that removal is proper.  See *Gaus v. Miles*, 980 F. 2d. 564, 566 (9th Cir. 1992); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); see also *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996) (when removing a case to federal court, defendants bear the burden of proving, by a preponderance of the evidence, actual facts sufficient to support jurisdiction).  The removal statute is strictly construed against removal, and all doubts respecting jurisdiction must be resolved in favor of remand.  *Gaus*, 980 F.2d at 566; *Libhart*, 592 F.2d at 1064.

### B.     Whether the Court Should Remand the Action to Los Angeles Superior Court on Procedural Grounds

Yhudai advances several arguments in support of his motion to remand.  Citing the procedural requirements for removal, he asserts that defendants' removal was untimely and that not

---

[19]*Id.*, ¶¶ 94-119.

4

1    all defendants consented to the removal.[20]

2          28 U.S.C. § 1446 governs the timeliness of removal.  It provides that "[t]he notice of removal

3    of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant,

4    through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon

5    which such action or proceeding is based, or within 30 days after the service of summons upon the

6    defendant if such initial pleading has then been filed in court and is not required to be served on the

7    defendant, whichever period is shorter."  28 U.S.C. § 1446(b)(1).  Where multiple defendants are

8    served on different dates, "[e]ach defendant shall have 30 days after receipt by or service on that

9    defendant of the initial pleading or summons described in paragraph (1) to file the notice of

10   removal."  28 U.S.C. § 1446(b)(2)(B).

11         Yhudai argues that, because SPS filed a notice of removal more than thirty days after the

12   complaint was served on MERS, BNY, and BofA, the removal was untimely under 28 U.S.C. §

13   1446(b)(1).[21]  On December 7, 2011, Congress amended § 1446 to add, *inter alia*, the following

14   language: "If defendants are served at different times, and a later-served defendant files a notice of

15   removal, any earlier-served defendant may consent to the removal even though that earlier-served

16   defendant did not previously initiate or consent to removal."  28 U.S.C. § 1446(b)(2)(C).  Prior to

17   this amendment, the Ninth Circuit had already adopted the later-served defendant rule, providing

18   that "each defendant is entitled to thirty days to exercise his removal rights after being served."

19   *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011).  SPS was served on June 2, 2015, and filed

20   a notice of removal on July 2, 2015.[22]  Under § 1446 and Ninth Circuit precedent, the removal was

21   therefore timely, despite the fact that other defendants were served on May 18, 2015 and failed to

22   remove within a month of that date.[23]

23         Yhudai also contends that removal was improper because not all defendants consented to

---

[20]Remand at 2.

[21]Remand at 6; see also Remand, Exh. B.

[22]Removal at 2; see also Opposition at 4-5.

[23]Remand, Exh. B.

removal.[24]  With few exceptions, all defendants who have been properly served must join in or consent to removal of a state court action.  See 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in or consent to the removal of the action"); see also *Ettlin v. Harris*, No. 13-SACV-1515-DOC (JPRx), 2013 WL 6178986, *2 (C.D. Cal. Nov. 22, 2013) ("A century ago, the Supreme Court announced the rule of unanimity, which requires that all defendants in a state court action consent to removal," citing *Chicago, Rock Island, & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900)).  Here, the notice of removal clearly stated that all defendants had consented to removal to federal court.[25]  See *In re Hydroxycut Marketing and Sales Practices Litig.*, No. 09MD2087–BTM (AJB), 2010 WL 2998855, *5 (S.D. Cal. July 29, 2010) ("[I]n *Proctor*, the Ninth Circuit adopted the position that one defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient to satisfy the rule of unanimity. Individual consent documents from each defendant are unnecessary," citing *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient" to establish unanimous joinder in removing to federal court)); *Flatwire Solutions, LLC v. Sexton*, No. CV 09–07479 DDP (FFMx), 2009 WL 5215757, *2 n. 5 (C.D. Cal. Dec.29, 2009) ("*Proctor* makes clear that an attorney of record for one defendant can provide notice of all defendants' consent to removal"). See also *Cardroom Int'l LLC v. Scheinberg*, No. CV 12-02870 MMM (AGRx), 2012 WL 2263330, *5 (C.D. Cal. June 18, 2012) ("Plaintiff argues that *Proctor* requires not only that counsel submit a sworn declaration stating that other defendants have consented, but also that the notice of removal be served on those defendants.

---

[24]Remand at 5.

[25]Removal at 6 ("Co-defendants Bank of America, N.A. ("BANA"), BNY Trust, NDSC and MERS consent to this notice of removal"); Opposition at 4.  The court concludes that all defendants consented to removal on the basis of the notice of removal rather than the declaration of Marvin Adviento.  (See Declaration of Marvin B. Adviento in Support of Defendants' Opposition to Motion to Remand ("Adviento Decl."), Docket No. 14-1 (Sept. 14, 2015)).  As a result, it need not address Yhudai's objections to statements regarding consent made by Adviento in the declaration.  (Plaintiff's Objection to the Declaration of Marvin B. Adviento in Support of Defendants' Opposition to Plaintiff's Motion to Remand ("Objection to Adviento Decl."), Docket No. 20 (Sept. 23, 2015)).

1    *Proctor* imposes no such requirement, and other courts in the Ninth Circuit have not read the case

2    in that manner").

3            Yhudai asserts that BofA could not have consented to the notice of removal, filed July 2,

4    2015, since prior to that, on June 30, 2015, it had entered into a stipulation with him to extend its

5    time to respond to the complaint in state court.[26]   Yhudai appears to contend that by entering into

6    a stipulation with him while the case was still in state court, BofA waived its right to consent to

7    removal.  "A defendant may waive the right to remove a state court action to federal court by taking

8    action in state court, after it is apparent that the case is removable, that manifests the defendants'

9    intent (1) to have the case adjudicated in state court and (2) to abandon the right to a federal forum."

10   *Koklich v. California Dep't of Corr.*, No. 1:11-CV-01403-DLB, 2012 WL 653895, *4 (E.D. Cal.

11   Feb. 28, 2012) (citing *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir.

12   1994)).   "[W]aiver of the right of removal must be clear and unequivocal," however, and "is

13   generally not lost by action in the state court short of proceeding to an adjudication on the merits."

14   *Id.* (internal citations omitted).  See also *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar*, No.

15   CV15-5099 PSG (JPRx), 2015 WL 5471434, *3 (C.D. Cal. Sept. 18, 2015) (finding no waiver of

16   the right to remove where "defendants participated in state court to the extent that they filed an

17   answer, attended a case management conference, signed a stipulation to continue trial, and

18   responded to discovery requests.  Defendants did not litigate on the merits, nor did their actions

19   manifest an 'intention . . . to abandon [their] right to a federal forum,' as the Ninth Circuit requires

20   in order to find a waiver"); see also *Resolution Trust Corp.*, 43 F.3d at 1240 (holding that defendant

21   had not waived its right to remove by filing a petition "for the defensive purpose of preserving the

22   status quo pending removal"); *Quinonez v. Jobworks, Inc.*, No. 15-CV-1202-H-RBB, 2015 WL

23   4873089, *3 (S.D. Cal. Aug. 13, 2015) ("actions which are preliminary and not conclusive in

24   character and which do not actually submit the merits of a claim for a binding decision do not

25   constitute a waiver of [the] defendant's right to remove. . . ," quoting *Kosen v. Ruffing*, No. 08cv0793

26   LAB (WMc), 2009 WL 56040, *6 (S.D. Cal. Jan.7, 2009)).  BofA merely stipulated to extend its

27   _____

28        [26]Remand at 5.

                                                7

1    time to respond to the complaint.  Far from reflecting an intent to abandon its right to a federal
2    forum, BofA appears merely to have been protecting its interests pending removal, which occurred
3    only a few days later.  The court therefore denies Yhudai's motion to remand on procedural grounds.

4    **C.    Whether the Court has Federal Question Jurisdiction**

5    Defendants' notice of removal invokes the court's federal question jurisdiction.[27]  They assert
6    that Yhudai's first cause of action alleges violations of the federal Fair Debt Collection Practices Act
7    ("FDCPA"), 15 U.S.C. § 1692e.[28]  A review of the claim reveals, however, that it seeks relief only
8    under California Civil Code § 1788.1(a) et seq., the Rosenthal Fair Debt Collection Practices Act
9    ("RFDCPA").[29]  Because Civil Code § 1788.17 incorporates and requires compliance with certain
10   provisions of the FDCPA – specifically 15 U.S.C. §§ 1692(b)-(j) – the complaint references the
11   federal statutes in pleading the RFDCPA claim.[30]  The question, therefore, is whether Yhudai
12   successfully pled a state rather than a federal claim.

13   Under 28 U.S.C. § 1331, district courts "have original jurisdiction of all civil actions arising
14   under the Constitution, laws, or treaties of the United States."  Federal question jurisdiction is
15   presumed absent unless defendants, as the parties seeking to invoke the court's jurisdiction, show
16   that plaintiff has either alleged a federal cause of action, *American Well Works Co. v. Layne &*
17   *Bowler Co.*, 241 U.S. 257, 260 (1916) ("a suit arises under the law that creates the action"), a state
18   cause of action that turns on a substantial dispositive issue of federal law, *Franchise Tax Bd. v.*
19   *Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983); *Smith v. Kansas City Title & Trust Co.*,
20   255 U.S. 180, 199 (1921), or a state cause of action that Congress has transformed into an inherently

22   [27]Removal at 3.

23   [28]*Id.*

24   [29]Complaint, ¶ 15.  Yhudai's complaint is somewhat unclear as to whether the claim is asserted
25   under the FDCPA or the RFDCPA.  Because Yhudai commences his pleading of the claim by quoting
     the incorporation of the federal statute by the RFDCPA, and because he contends he does not allege any
26   federal claims in his opposition to defendants' motion to remand, the court concludes that he intended
27   to assert the debt collection practices claim under California law.

28   [30]*Id.*, ¶¶ 15, 20, 25-28.

1    federal claim by completely preempting the field of its subject matter, *Avco Corp. v. Aero Lodge No.*

2    *735*, 390 U.S. 557, 560 (1968); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

3    Whether a claim "arises under" federal law must be determined by reference to the "well-

4    pleaded complaint." *Franchise Tax Bd.*, 463 U.S. at 9-10.  Since a defendant may remove a case

5    under 28 U.S.C. § 1441(b) only if the claim could have been brought in federal court, the existence

6    of removal jurisdiction must also be determined by reference to the "well-pleaded complaint."

7    *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  The well-pleaded

8    complaint rule makes plaintiff the "master of the claim" for purposes of removal jurisdiction.

9    *Caterpillar, Inc.*, 482 U.S. at 392.  In instances where a plaintiff could assert claims under both

10   federal and state law, he can, as the master of the claim, prevent removal by ignoring the federal

11   claim and alleging only state law causes of action.  *Rains v. Criterion Systems, Inc.*, 80 F.3d 339,

12   344 (9th Cir. 1996).

13   For federal question jurisdiction to attach, "a right or immunity created by the Constitution

14   or laws of the United States must be an element, and an essential one, of the plaintiff's cause of

15   action."  *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).  Only where the "right

16   to relief under state law requires resolution of a substantial question of federal law in dispute

17   between the parties" does a state law cause of action "arise under" the laws of the United States.

18   *Franchise Tax Bd.*, 463 U.S. at 13.  A claim does not present a "substantial question" of federal law

19   merely because a federal question is an "ingredient" of the state cause of action.  Indeed, "the mere

20   presence of a federal issue in a state cause of action does not automatically confer federal question

21   jurisdiction."  *Merrell Dow Pharmaceuticals*, 478 U.S. at 813.

22   Yhudai chose not to assert a claim under the federal FDCPA, and instead alleged violations

23   of California's RFDCPA.  He cites the federal FDCPA merely to support his state law claim, and

24   thus his complaint does not raise a federal question.  *Zielinski v. Target Nat. Bank*, No. CV 10-2954

25   GAF (CWx), 2010 WL 2569059, *2 (C.D. Cal. June 21, 2010) ("Plaintiff[ does] not characterize

26   [his] Rosenthal Act claim as a federal claim, but instead seek[s] to simply borrow FDCPA violations

27   as a means for proving [his] Rosenthal Act claim.  Accordingly, the Rosenthal Act claim is not

28   properly characterized as a federal claim, and [this] basis for federal question jurisdiction is

1    unavailing").  See *Leal v. U.S. Bank Nat'l Ass'n*, No. CV 10-3925 PA, 2010 WL 2389959, *2 (C.D.

2    Cal. June 9, 2010) ("Merely using the potential violation of a federal statute to form part of the basis

3    for a state law cause of action does not transform the cause of action into a federal claim"); *Oritz v.*

4    *Indymac Bank, F.S.B.*, No. CV 09-8669 PSG (AJWx), 2010 WL 2035791, *1 n. 3 (C.D. Cal. May

5    20, 2010) (basing a § 17200 claim, *inter alia*, on the violation of an implementing regulation of the

6    Truth in Lending Act ("TILA") did not transform the state law claim into a federal cause of action);

7    *California v. H & R Block, Inc.*, No. C 06-2058 SC, 2006 WL 2669045, *3-4 (N.D. Cal. Sept. 18,

8    2006) (explaining that § 17200 claim alleging a TILA violation did not "arise under" federal law;

9    see also *Rains*, 80 F.3d at 346 ("When a claim can be supported by alternative and independent

10   theories – one of which is a state law theory and one of which is a federal law theory – federal

11   question jurisdiction does not attach because federal law is not a necessary element of the claim").

12   Defendants have therefore not met their burden of showing that the court has federal question

13   jurisdiction under 28 U.S.C. § 1331.

14          **D.       Whether the Court has Diversity Jurisdiction**

15          Defendants also contend the court has diversity jurisdiction to hear the action.  "[J]urisdiction

16   founded on [diversity] requires that parties be in complete diversity and the amount in controversy

17   exceed $75,000."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see

18   28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the

19   matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

20   between . . . citizens of different States. . .").  Federal courts have jurisdiction only where there is

21   complete diversity, i.e., plaintiff's citizenship is diverse from that of each named defendant.  28 U.S.C.

22   §§ 1332(a)(1), (c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI*

23   *Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.)

24   ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that

25   of every defendant," citing *Lewis*, 519 U.S. at 68).

26          **1.       Amount in Controversy**

27          The court first examines whether the amount in controversy exceeds $75,000.  "[W]hen a

28   complaint filed in state court alleges on its face an amount in controversy sufficient to meet the

                                                    10

1   federal jurisdictional threshold, [the amount in controversy] requirement is presumptively satisfied

2   unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount."

3   *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  See also *St. Paul Mercury*

4   *Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that "the sum claimed by the

5   plaintiff controls if the claim is apparently made in good faith," and that "[i]t must appear to a legal

6   certainty that the claim is really for less than the jurisdictional amount to justify dismissal").  Where,

7   by contrast, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite

8   amount in controversy is pled[,] . . . [courts] apply a preponderance of the evidence standard."

9   *Guglielmino*, 506 F.3d at 699.  Finally, "when a state-court complaint affirmatively alleges that the

10  amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must

11  prove with legal certainty that [the] jurisdictional amount is met.'"  *Id.* (quoting *Lowdermilk v. U.S.*

12  *Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007)).[31]

13

14  [31]Until recently, the Ninth Circuit applied the same "legal certainty" standard to removals in

15  which the complaint affirmatively alleged an amount in controversy below the jurisdictional threshold.
    In *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007), the Ninth Circuit held that

16  when a plaintiff pleads a specific amount in controversy that is less than the jurisdictional minimum,
    a defendant seeking to remove the case under the Class Action Fairness Act ("CAFA") must show to

17  a "legal certainty" that the jurisdictional amount is at issue.  The court identified two principles
    informing this conclusion: "First, as federal courts, we are courts of limited jurisdiction and we will

18  strictly construe our jurisdiction.  Second, it is well established that the plaintiff is 'master of her
    complaint' and can plead to avoid federal jurisdiction."  *Id.* at 998-99 (citations omitted).  Several

19  district courts subsequently applied the legal certainty rule in § 1332(a) diversity jurisdiction cases. See,

20  e.g., *Site Mgmt. Solutions, Inc. v. TMO CA/NV, LLC*, No. CV 10–08679 MMM (JEMx), 2011 WL
    1743285, *3 (C.D. Cal. May 4, 2011) (applying the legal certainty standard in a § 1332(a) diversity

21  jurisdiction case); *Lara v. Trimac Transp. Servs. Inc.*, No. CV 10–4280–GHK (JCx), 2010 WL 3119366,
    *1 n. 1 (C.D. Cal. Aug. 6, 2010) (same); but see *Lyon v. W.W. Grainger, Inc.*, No. C 10–00884 WHA,

22  2010 WL 1753194, *1 (N.D. Cal. Apr.29, 2010) ("It would be an unprecedented extension of Ninth

23  Circuit caselaw to apply the burden of proof that plaintiff suggests to a non-CAFA case such as this").

24      In *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345, 1347 (2013), plaintiff filed
    a class action lawsuit, alleging that he and the "Class stipulate[d] they [would] seek to recover total

25  aggregate damages of less than [the CAFA jurisdictional threshold of] five million dollars."  Defendant
    removed, invoking CAFA.  *Id.* at 1348.  The district court remanded.  It found that although the amount

26  in controversy would have exceeded $5,000,000 in the absence of the stipulation, it could not be met
    given the stipulation.  *Id.*  The Supreme Court held that the district court erred in relying on the

27  stipulation because "a plaintiff who files a proposed class action cannot legally bind members of the
    proposed class before the class is certified."  *Id.* at 1349.

28      In *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013), the Ninth Circuit

recognized that *Standard Fire* overruled *Lowdermilk*'s "legal certainty" standard in CAFA cases. See *id.* at 977 ("Our reasoning there for imposing on defendants the burden to prove the amount in controversy to a legal certainty, rather than the ordinary preponderance of the evidence standard, is clearly irreconcilable with the Supreme Court's reasoning in *Standard Fire*"). The court held that the second principle informing the *Lowdermilk* rule – to "preserve the plaintiff's prerogative . . . to forgo a potentially larger recovery to remain in state court"– was "directly contradicted by *Standard Fire*['s] holding that] a plaintiff seeking to represent a putative class could not evade federal jurisdiction by stipulating that the amount in controversy fell below the jurisdictional minimum." *Id.* at 980, 981. The also concluded that *Standard Fire* had overruled *Lowdermilk*'s directive that district courts "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met," and that § 1332(d) required district courts to evaluate the potential claims of absent class members rather than plaintiff's complaint. *Id.* at 981.

Since *Rodriguez* was decided, district courts in the Ninth Circuit have disagreed as to whether the legal certainty standard continues to apply in non-CAFA cases. Compare *Stelzer v. CarMax Auto Superstores Cal., LLC*, 13–CV–1788–LAB–JMA, 2013 WL 6795615, *5 & n. 2 (S.D. Cal. Dec. 20, 2013) (applying the legal certainty standard) with *Cagle v. C&S Wholesale Grocers, Inc.*, No. 2:13–cv–02134–MCE–KJN, 2014 WL 651923, *7 (E.D. Cal. Feb. 19, 2014) (holding that the preponderance of the evidence standard applies).

The court believes that *Standard Fire* and *Rodriguez* leave the legal certainty rule intact in non-CAFA cases. The rationale underlying those decisions – i.e., that a plaintiff cannot bind absent class members before a class is certified – has no application outside the class action context. In contrast, the reasoning that underlies the *Lowdermilk* rule – i.e., that federal courts are courts of limited jurisdiction, and that a plaintiff is "master of her complaint" – applies with full force in non-CAFA cases. Moreover, the "legal certainty" test for cases such as this, where plaintiff alleges damages in excess of the jurisdictional minimum, does not derive from *Lowdermilk* and rests on a distinct line of reasoning. The Ninth Circuit announced the rule in *Sanchez v. Monumental Life Insurance Company*, 102 F.3d 398, 402 (9th Cir. 1996). There, it adopted the reasoning of *Garza v. Bettcher Indus., Inc.*, 752 F.Supp.753 (E.D. Mich. 1990), which it quoted at length:

> "[This discussion] is explicitly premised on the assumption that the amount in controversy is met by the express allegations of the plaintiff's complaint *and is limited in utility to cases in which the plaintiff himself has 'laced the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount.* In such cases, it would, of course, make sense to accord the plaintiff's own claim some weight in determining the actual amount in controversy. As noted by the Supreme Court, this is especially true where the complaint was originally filed in state court (with the requisite federal jurisdictional amount pleaded in the request for relief) because it is highly unlikely in that instance that the plaintiff would have inflated his request for damages solely to obtain federal jurisdiction. Consequently, where the state court complaint itself states damages in an amount sufficient to obtain federal diversity of citizenship jurisdiction, by way of removal, and the defendant does in fact remove the case to federal court, it would make very good sense to require proof to a legal certainty that the plaintiff cannot recover damages equal to or greater than the jurisdictional amount." *Sanchez*, 102 F.3d at 402 (quoting *Garza*, 752 F.Supp. at 755-56 (emphasis added)).

Accordingly, the court concludes that neither *Knowles* nor *Rodriguez* disturbs the "legal certainty" rule

1

2   "In actions seeking declaratory or injunctive relief, it is well established that the amount in

3   controversy is measured by the value of the object of the litigation."   *Hunt v. Wash. State Apple*

4   *Adver. Comm'n*, 432 U.S. 333, 347 (1977).   Here, the value of the mortgage loan is an appropriate

5   measure of the amount in controversy.   In the notice of removal, defendants contend that the amount

6   in controversy exceeds $75,000 because plaintiff's claims concern the validity of the $960,000 note

7   he executed and secured with a deed of trust on the property.[32]   In the prayer, Yhudai seeks, in

8   relevant part, restitution, refund of monies paid on the note, disgorgement, quiet title, and attorneys'

9   fees.[33]   Because it appears Yhudai seeks full settlement of the $960,000 note and return of all monies

10  paid pursuant thereto, and because he does not dispute that the amount in controversy requirement is

11  satisfied, the court concludes that defendants have shown that this requirement for diversity jurisdiction

12  is met.   See *Sekhon v. BAC Home Loans Servicing LP*, 519 Fed. Appx. 971, 972 (9th Cir. Mar. 8,

13  2013) (Unpub. Disp.) (holding that the amount in controversy in an action regarding the validity of

14  promissory notes and deeds of trust "is properly measured by the $505,000 face value of the notes

15  that Appellees stand to lose should Appellants' interpretation of events prove correct").

16              **2.      Yhudai's Citizenship**

17              Defendants' notice of removal alleges that plaintiff is a citizen of California.[34]   As support for

18  the allegation, the notice cites plaintiff's complaint, which pleads that Yhudai is a California resident

19  and that he has owned the property at issue since 2005.[35]   Defendants also contend that Yhudai has

20  evidenced his intent to remain in California by invoking the California Homeowner's Bill of Rights,

21

22  _____

23  used to determine the amount in controversy in removal cases where plaintiff alleges damages in excess
    of the jurisdictional minimum.   The court therefore applies the "legal certainty" rule  here.

24  [32]Removal at 5.

25  [33]Complaint at 21-22.

26  [34]Removal at 4; see also Complaint, ¶ 1 ("Plaintiff is an individual residing in the County of Los

27  Angeles, State of California").

28  [35]Complaint, ¶ 1, 8.

which is only applicable to "owner-occupied residential real property."[36]

A person is a citizen of the state in which he has his domicile, i.e., a permanent home where he intends to remain or to which he intends to return.  See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return").  A person's residency does not determine citizenship for diversity jurisdiction purposes.  *Kanter*, 265 F.3d at 857 ("[T]he diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States.  The natural person's state citizenship is then determined by her state of domicile, not her state of residence.  A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.  A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state"); see also *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth").

Defendants base their allegation that Yhudai is a California domiciliary, *inter alia*, on Yhudai's assertion that he is a California resident and the fact that he has owned the property in question since 2005.[37]  Because allegations concerning a person's residency are not sufficient to establish citizenship, defendants cannot meet their burden of establishing Yhudai's citizenship merely by citing his allegation of residency.  See, e.g., *Palacio Capital Partners, Inc. v. Cha*, No. CV 09-5753 PA (AGRx), 2009 WL 2566772, *1 (C.D. Cal. Aug. 18, 2009) ("Removing Defendant alleges in the Notice of Removal that 'Plaintiff Greg Jeong is a citizen of and domiciled in the State of California.'. . .  However, the complaint [ ] merely states that 'Jeong was and is an individual residing and doing business in Los Angeles County, California.'  Residency is not the same as citizenship.  Accordingly, Removing Defendant's allegation of plaintiff Greg Jeong's citizenship is insufficient"); *Goodfellow v. Merrill*, No.

---

[36]Removal at 4.

[37]Removal at 4; Complaint, ¶ 1.

1  09cv333–L(NLS), 2009 WL 453109, *1 (S.D. Cal. Feb. 23, 2009) ("Regarding Plaintiff's citizenship,

2  the notice of removal inaccurately paraphrases the allegations in the complaint, which provide the sole

3  basis for NMIS' statement regarding Plaintiff's citizenship.  Contrary to the representations in the notice

4  of removal, the complaint alleges that Plaintiff is a California resident, not a citizen.  For purposes of

5  diversity jurisdiction, it is citizenship and not residency which matters").  Similarly, the fact that Yhudai

6  has owned the property that is the subject of this lawsuit since 2005 does not establish that he intends

7  to remain in the state in the future.

8        Defendants' invocation of the California Homeowner's Bill of Rights ("HBOR") is likewise not

9  sufficient to establish Yhudai's intent to remain in California.  HBOR applies only to mortgage loans

10  secured by deeds of trust on owner-occupied residential real property.  CAL. CIV. CODE § 2924.15(a)

11  (HBOR requirements are applicable only to "mortgages or deeds of trust that are secured by owner-

12  occupied residential real property . . . [which] means that the property is the principal residence of the

13  borrower and is security for a loan made for personal, family, or household purposes").  The court

14  cannot  infer that the owner-occupied requirement is met simply from the fact that Yhudai asserts a

15  claim under HBOR, as the complaint contains no factual allegations to that effect, and the HBOR claim

16  might be subject to dismissal on that ground.[38]

17  ────────────────

18  [38]Yhudai states in his motion that "[t]he Plaintiff has always lived in California as the subject

19  property is also located in California."  (Motion at 6.)  In the Ninth Circuit, however, admissible
    evidence is required to carry a party's burden of showing that the district court has subject matter

20  jurisdiction to hear an action.  See, e.g., *Duarte v. Standard Ins. Co.*, No. 08-03021 JSW, 2008 WL
    3978082, *5 (N.D. Cal. Aug. 26, 2008) (entertaining arguments  and striking a key declaration

21  establishing diversity of citizenship as inadmissible because it contained hearsay, but ultimately finding
    diversity because "Standard submits [other] competent and admissible evidence of the facts contained

22  in those paragraphs in opposition to Duarte's motion to remand"); *Design Trend Int'l Interiors, Ltd. v.
    Huang*, No. CV-06-1987-PHX-LOA, 2007 WL 1146431, *2 (D. Ariz. Apr. 18, 2007) ("Absent good

23  cause shown, the Defendants' failure to timely establish by affidavit or other admissible evidence
    complete diversity of citizenship at the time of the filing of the Complaint shall result in the entry of a

24  remand order and possible imposition of an award of reasonable attorneys' fees and costs against
    Defendants").  Moreover, the court declines to exercise its discretion to consider Yhudai's statement

25  a judicial admission.  It is defendants' burden, as the removing parties, to show by a preponderance of
    the evidence that the court has jurisdiction to hear the action.  Allowing them to satisfy that burden by

26  looking to a statement of plaintiff in his motion – a statement defendants *do not even cite* in their

27  opposition – would shift this burden, and would run contrary to the rule that the removal statute is

28  strictly construed against removal, and that all doubts respecting jurisdiction are resolved in favor

Defendants have adduced no evidence that any of the other factors courts consider in determining a party's citizenship – e.g., voter registration, payment of taxes, place of employment, or driver's license and vehicle registration information – demonstrate Yhudai is a California citizen. See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  As the pleadings stand, therefore, defendants have failed adequately to demonstrate that Yhudai is a California citizen.

### 3.     Defendants' Citizenship

"[A] corporation [is] deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  The term "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeals have called the corporation's 'nerve center.'  And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

Defendants allege the citizenship of the four corporate defendants in the notice of removal, referencing the state of incorporation and principal place of business for each.[39]  SPS is allegedly incorporated and has its principal place of business in Utah, and thus is a Utah citizen.[40]  BNY is a Delaware corporation with its principal place of business in New York, and thus is a citizen of those two states.[41]  NDSC is incorporated and has its principal place of business in Arizona, and thus is an Arizona citizen.[42]  Finally, MERS is a Delaware corporation with its principal place of business in Virginia, and thus is a citizen of those two states.[43]

---

of remand.  *Gaus*, 980 F.2d at 566; *Libhart*, 592 F.2d at 1064.

[39]Removal at 4-5.

[40]*Id*. at 4.

[41]*Id*.

[42]*Id*. at 5.

[43]*Id*.

16

1   "[A] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set

2   forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).

3   Defendants allege in the notice of removal that BofA's main office is located in North Carolina.[44]  It is

4   thus a North Carolina citizen.

5     Although none of the defendants is a citizen of California, defendants have not adequately

6   shown that Yhudai is a California citizen.  Consequently, they have not met their burden of

7   establishing that there is complete diversity of citizenship among parties as required by § 1332.  The

8   court therefore finds that it lacks diversity jurisdiction to hear the action.

9     **E. Whether Yhudai is Entitled to Attorneys' Fees**

10     Yhudai's motion to remand also seeks fees and costs incurred in connection with the motion

11   to remand.  28 U.S.C. 1447(c).  "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may

12   require payment of just costs and any actual expenses, including attorney fees, incurred as a result

13   of the removal.'" *Federal Home Loan Mortg. Corp. v. Lettenmaier*, No. CV–11–165–HZ, 2011 WL

14   1297960, *1 (D. Or. Apr. 5, 2011) (quoting 28 U.S.C. § 1447(c)).  "'Absent unusual circumstances,

15   courts may award attorney's fees under § 1447(c) only where the removing party lacked an

16   objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis

17   exists, fees should be denied.'" *Id.* (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141

18   (2005)).

19     "Removal is not objectively unreasonable solely because the removing party's arguments

20   lack merit and the removal is ultimately unsuccessful." *Id.* (citing *Lussier v. Dollar Tree Stores,*

21   *Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).  "Rather, the court should assess 'whether the relevant

22   case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity of the law

23   at the time of removal.'" *Id.* (quoting *Lussier*, 518 F.3d 1066); see also *Patel v. Del Taco, Inc.*, 446

24   F.3d 996, 999–1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm the arbitration award

25   contained only one state law cause of action; it did not contain any federal claim that could provide

26   the basis for a § 1441(c) removal.  Joinder of a federal claim and a claim for removal of a state court

27

28     [44]*Id.*

1    action in a federal complaint cannot effect a § 1441(c) removal.  There being no objectively

2    reasonable basis for removal, the district court did not abuse its discretion in awarding attorney's

3    fees under § 1447(c) to Del Taco").

4         The court declines to award attorneys' fees.  California courts have concluded that *pro se*

5    plaintiffs are not entitled to an award of attorneys' fees.  See *Sue Tsang v. Select Portfolio Servicing,*

6    *Inc.*, No. EDCV 12-00127 VAP, 2012 WL 10423187, *9 (C.D. Cal. Aug. 3, 2012) (denying

7    attorneys' fees to a plaintiff after granting a motion to remand because plaintiff was *pro se*, quoting

8    *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 936 (9th Cir. 2007) ("Pro se plaintiffs, though, are

9    not entitled to attorney's fees")).  Because Yhudai is proceeding *pro se* and has incurred no

10   attorneys' fees, the court concludes that he is not entitled to a fee award.

11        Further, although not ultimately persuasive, the court does not find defendants' arguments

12   so objectively unreasonable as to warrant an award of attorneys' fees.  See *Lussier*, 518 F.3d at1065

13   (noting that while "[t]here is no question that [defendant's] arguments were losers[,] . . . removal is

14   not objectively unreasonable solely because the removing party's arguments lack merit, or else

15   attorney's fees would always be awarded whenever remand is granted"); *Morales v. Gruma Corp.*,

16   No. CV 13–7341CAS (FFMx), 2013 WL 6018040, *6 (C.D. Cal. Nov. 12, 2013) (declining to award

17   attorneys' fees); *Coastal Const. Co. v. N. Am. Specialty Ins. Co.*, No. CV 10–00206–DAE–BMK,

18   2010 WL 2816694, *8 (D. Haw. July 14, 2010) ("While the Court concludes that NAS's arguments

19   for fraudulent joinder lack merit, the Court does not find NAS's arguments to be objectively

20   unreasonable as to warrant payment of attorneys' fees and costs").  Accordingly, the court declines

21   to award attorneys' fees.

22

23

24

25

26

27

28

### III. CONCLUSION

For the reasons stated, the court concludes that it lacks subject matter jurisdiction and grants Yhudai's motion to remand.  The clerk is directed to remand the action to Los Angeles Superior Court forthwith.


DATED: October 2, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE